**NOT RECOMMENDED FOR PUBLICATION**

No. 23-6005

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 5, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>KENNETH SHAVER,<br><br>Defendant-Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |

O R D E R

Before: DAVIS, MATHIS, and BLOOMEKATZ, Circuit Judges.

Federal prisoner Kenneth Shaver appeals his conviction after a jury trial for first-degree murder. Shaver challenges the sufficiency of the evidence supporting his conviction, the district court's ruling allowing the government to introduce other acts evidence under Federal Rule of Evidence 404(b), and the district court's decision to instruct the jury that it could convict Shaver as aider and abettor of the murder under 18 U.S.C. § 2. The parties have waived oral argument, and the panel unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a). We affirm Shaver's conviction.

A. Background

In April 2023, a federal jury convicted Shaver of first-degree murder, in violation of 18 U.S.C. §§ 1111(a) and 2, for the February 2015 stabbing death of Lance Smith at United States Penitentiary (USP) McCreary.

During the trial, the government presented evidence that Shaver, a white supremacist who was serving a 322-month sentence at McCreary for drug-trafficking and firearms possession, became suspicious that Smith, another white supremacist, had cooperated with the government. A

surveillance video showed Justin Boe, yet another white supremacist, bringing Smith to Boe's cell, where Shaver was waiting. There, Smith was beaten and stabbed 60 times with a metal shank. Smith suffered blunt force trauma and stab wounds to his head, neck, trunk, chest, abdomen, back, and extremities. He died at a hospital several hours after the attack. Surveillance cameras did not capture the murder itself, but they did show Shaver and Boe exiting Boe's cell after the assault. Shaver then went to his cell, which was adjacent to Boe's cell, changed clothes, exited his cell, and threw a t-shirt with blood spatter on it into a trash can. Boe deposited the murder weapon in a trash can in the upper tier of the housing unit. Another inmate, Charlie Bells, Jr., testified that, while he and Shaver were both in recreation cages in the special housing unit, Shaver admitted that he killed Smith.

Over Shaver's objections, the district court permitted the government to introduce excerpts of Shaver's prison record under Federal Rule of Evidence 404(b) to establish that he had been disciplined twice for possessing scrap metal that could be used to make a weapon. Additionally, and again over Shaver's objections, the district court instructed the jury that it could find Shaver guilty of first-degree murder under the theory that he aided and abetted Boe in killing Smith.

After the conviction, the district court sentenced him to a mandatory term of life imprisonment. *See* 18 U.S.C. § 1111(b).

On appeal, Shaver argues that (1) the evidence was insufficient to convict him, (2) the district court abused its discretion in admitting the Rule 404(b) evidence, and (3) the district court abused its discretion in giving the jury an aiding-and-abetting instruction.

B. Analysis

1. Sufficiency of the Evidence

We review the sufficiency of the evidence de novo, asking "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Collins*, 799 F.3d 554, 589 (6th Cir. 2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In considering sufficiency claim, we do not "weigh the evidence presented, consider the credibility of witnesses,

or substitute our judgment for that of the jury." *United States v. Jackson*, 470 F.3d 299, 309 (6th Cir. 2006) (quoting *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999)). Rather, we "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *Id.* (quoting *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001)). "Circumstantial evidence alone can be sufficient to sustain a conviction, even if it does not remove every possibility besides that of guilt." *United States v. Rosales*, 990 F.3d 989, 994 (6th Cir. 2021).

To establish first-degree murder under § 1111(a), the government must prove beyond a reasonable doubt that, within the special maritime and territorial jurisdiction of the United States, the defendant unlawfully killed the victim with premeditation and "malice aforethought." *United States v. Bradford*, 822 F. App'x 335, 339 (6th Cir. 2020). "A killing is premeditated when it is the result of planning and deliberation." *United States v. Garcia-Meza*, 403 F.3d 364, 371 (6th Cir. 2005). "Malice aforethought" means that the defendant killed the victim "deliberately and intentionally." *Id.*

The principal issue in the trial was the identity of Smith's murderer. Shaver contends that the evidence showed only that Boe alone killed Smith and that Shaver was merely present. But we conclude that the evidence was sufficient for the jury to convict Shaver as the principal in Smith's first-degree murder.

First, the government presented evidence that Shaver had a motive to murder Smith because Smith was suspected of cooperating with the government. Although motive is not an element of the first-degree murder, *see United States v. Begay*, 673 F.3d 1038, 1045 (9th Cir. 2011) (en banc), motive evidence supports an inference that the defendant committed the offense, *see United States v. Lawrence*, 735 F.3d 385, 413-14 (6th Cir. 2013).

Here, the jury heard evidence that inmates who are suspected of cooperating with the government are at risk of being assaulted and killed by other inmates. The jury saw pre-murder email correspondence in which Shaver, white supremacist "Banjo" Daniels, and Daniels's wife discussed public records that implied that Smith had cooperated with the government. Shaver also requested more information regarding Smith's sentence and whether Smith had received a reduced

sentence. Additionally, Banjo Daniels referred to Smith in the past tense, stating that he "liked" Smith, and appeared to consign Smith to his fate if he had cooperated, stating, "I actually want him to not be fucked up, but if he is then that[']s what it is." From this evidence, a reasonable juror could infer that Shaver had a motive and intended to kill Smith because he suspected that Smith had cooperated with the government.

Second, Shaver did not summon help for Smith upon exiting Boe's cell, even though he would have been aware that Smith had been stabbed multiple times and was grievously wounded. Instead, Shaver changed his clothes and tried to throw away his blood-spattered t-shirt. The jury could infer that Shaver's post-attack conduct demonstrated consciousness of guilt. *Cf. United States v. Dodson*, 450 F. App'x 505, 509 (6th Cir. 2011) (stating that evidence of concealment is "evidence of consciousness of guilt, and thus of guilt itself" (quoting *United States v. Griffin*, Nos. 96-2300, 96-2310, 1999 WL 71602, at *5 (6th Cir. Jan. 22, 1999) (table))).

Third, there was sufficient evidence for a reasonable juror to infer that Shaver killed Smith with premeditation. In addition to the email evidence demonstrating Shaver's motive and intent to kill Smith, the surveillance video showed that Shaver and Boe first met in Shaver's cell. When Boe left, Shaver went into Boe's cell and remained there. Boe then led Smith into his cell, where he was stabbed to death. From this evidence, a reasonable juror could infer that Shaver was waiting in the cell to ambush Smith. Lying in wait is evidence of premeditation. *See United States v. Downs*, 56 F.3d 973, 974-75 (8th Cir. 1995).

Fourth, there was sufficient evidence for a reasonable juror to infer that Shaver killed Smith with "malice aforethought," i.e., deliberately and intentionally. Specifically, Shaver's use of a shank and the number and nature of Smith's stab wounds sufficiently demonstrated that Shaver exhibited a "callous and wanton disregard for human life." *Lawrence*, 735 F.3d at 424.

And fifth, Bells testified that Shaver admitted to him that he had killed Smith and that it was "enjoyable" to him. The testimony of a jailhouse informant can support a conviction. *See United States v. Miller*, 562 F. App'x 272, 295 (6th Cir. 2014); *United States v. Herrick*, 512 F. App'x 534, 537-38 (6th Cir. 2013); *United States v. Warren*, 24 F. App'x 274, 276 (6th Cir. 2001).

Shaver argues that it is "simply unbelievable" that he, a "skinhead," would confess to Bells because Bells was a transgender African American with "a long history of cooperation" with the government. But we do not second-guess a jury's credibility determination in reviewing the sufficiency of the evidence. *Jackson*, 470 F.3d at 309. And Bells's testimony was not so implausible as to defy belief. *See United States v. Caraway*, 411 F.3d 679, 682-83 (6th Cir. 2005); *cf. United States v. Bailey*, 444 U.S. 394, 414-15 (1980) (stating that the jury, and not the appellate courts, must decide whether "a particular witness spoke the truth or fabricated a cock-and-bull story").

Accordingly, we conclude that the evidence was sufficient for the jury to convict Shaver of the first-degree murder of Lance Smith.

2. Rule 404(b) Evidence

Next, Shaver argues that the district court abused its discretion in admitting evidence that he had prior disciplinary infractions for possessing pieces of metal that could be fashioned into a weapon. He contends that there was insufficient evidence that he actually possessed the contraband and that the evidence was more prejudicial than probative.

Under Federal Rule of Evidence 404(b)(1), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." But under Rule 404(b)(2), "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." And under Federal Rule of Evidence 403, a district court may exclude other acts evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See also United States v. Lester*, 98 F.4th 768, 776 (6th Cir. 2024).

District courts follow a three-step process in admitting other acts evidence:

> First, the district court must make a preliminary determination regarding whether there is sufficient evidence that the "other acts" took place. The district court must then determine whether those "other acts" are admissible for a proper purpose under

> Rule 404(b). Finally, the district court must determine whether the "other acts" evidence is more prejudicial than probative.

*United States v. Jaffal*, 79 F.4th 582, 594 (6th Cir. 2023) (quoting *United States v. Bell*, 516 F.3d 432, 440 (6th Cir. 2008)). In turn, we apply three different standards in reviewing a district court's admission of other acts evidence:

> (1) we use the clear-error standard in reviewing the factual determination of whether the other acts actually took place, (2) we review de novo the legal determination of whether the other acts were admissible for a proper purpose, and (3) we use the abuse-of-discretion standard in reviewing the determination of whether the other-acts evidence is more prejudicial than probative.

*Id.* Applying these standards, we conclude that the district court did not err in admitting evidence that Shaver had previously possessed pieces of metal that could be manufactured into a weapon.

As to the first step, the government is not required to prove that the other acts occurred by a preponderance of the evidence. *Huddleston v. United States*, 485 U.S. 681, 689 (1988). Instead, "[t]he court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence." *Id.* at 690. Here, the conditional fact was whether Shaver had previously possessed contraband pieces of metal that could be fashioned into a weapon. And there was sufficient evidence for the jury to conclude that Shaver committed these acts.

A USP Hazelton corrections officer testified that in 2009, when Shaver was incarcerated there, he discovered a 15½ inch piece of metal hidden in Shaver's cell. The officer also testified that inmates frequently make weapons out of this material and that Shaver was the only occupant of the cell. Additionally, a corrections officer from the Laurel County, Kentucky, Detention Center testified that in 2018, he was called to Shaver's isolation cell, where he observed Shaver holding a contraband metal rod that had been pried off of the cell door as well as a separate foot-long piece of metal in Shaver's cell. Based on this evidence, the district court did not clearly err in concluding that Shaver had previously possessed contraband metal weapons-making material.

As to the second step, the fact that Shaver had possessed similar weapons-making contraband on other occasions made it more likely that he had the opportunity to possess the

murder weapon in this case and therefore that he murdered Smith. *See United States v. Peete*, 781 F. App'x 427, 442 (6th Cir. 2019); *United States v. Jobson*, 102 F.3d 214, 221 (6th Cir. 1996); *United States v. Woods*, 613 F.2d 629, 636 (6th Cir. 1980).

Finally, as to the third step, the district court did not abuse its discretion in concluding that the probative value of the other acts evidence outweighed any potential unfairly prejudicial effect. The evidence lacked any kind of inflammatory or emotional force that could lead the jury to convict Shaver for improper reasons. *See United States v. Hazelwood*, 979 F.3d 398, 412 (6th Cir. 2020). Nor did it imply that Shaver was prone to committing murder. *See United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010). And the court gave the jury a limiting instruction on the proper use and consideration of other acts evidence in its closing instructions. *See United States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999).

Shaver also contends that the government gave him insufficient notice of its intent to use this evidence at trial. But the government provided notice of its intent to introduce this evidence four weeks before trial. And, as the district court pointed out, Shaver only speculated that additional time would have allowed him to rebut the government's showing that the prior acts occurred. Accordingly, we conclude that the government gave Shaver sufficient notice of its intent to use Rule 404(b) evidence. *See United States v. Guy*, 708 F. App'x 249, 260 (6th Cir. 2017); *United States v. French*, 974 F.2d 687, 694-95 (6th Cir. 1992).

We affirm the district court's admission of the other acts evidence in this case.

3. Aiding and Abetting Jury Instruction

Lastly, Shaver argues that there was insufficient evidence for the district court to instruct the jury that it could convict him under a theory that he aided and abetted Boe in murdering Smith. But given our conclusion that the evidence was sufficient for the jury to convict Shaver as the principal, any instructional error was harmless. *See Griffin v. United States*, 502 U.S. 46, 59-60 (1991); *United States v. Agrawal*, 97 F.4th 421, 434 (6th Cir. 2024), *cert. denied*, 2024 WL 4427138 (U.S. Oct. 7, 2024) (No. 23-7823).

Conclusion

For these reasons, we **AFFIRM** Shaver's first-degree murder conviction.

ENTERED BY ORDER OF THE COURT

Kelly L. Stephens, Clerk